UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(BOSTON)

|                          |   CHAPTER 7
IN RE:                     |   CASE NO. 21-11009-JEB
Dusan Pittner              |
Debtor                     |
                           |

## EXPEDITED MOTION TO INTERVENE AS CREDITORS TO BE PAID FROM ESTATE AND/OR RELIEF FROM ANY STAY THAT REMAINS IN PLACE

NOW COME Kim Duke and David Duke (hereinafter the "Dukes"), who hereby move to intervene as creditors in accordance with Fed. R. Bankr. P. 2018 as creditors of the Debtor Dusan Pittner (hereinafter "Debtor"). The Dukes further seek to be added as a creditor to be paid by the Trustee with any funds being held. In the alternative, the Dukes seek relief to proceed in the collection of the Judgment they have against Debtor by filing a state reach-and-apply action against the Trustee, levying on their execution, or any other manner of collection necessary to collect their Judgment. In support of this Motion, the Trustees state as follows:

### BACKGROUND ON BANKRUPTCY

Though the Dukes only recently learned of the Debtor's Bankruptcy, a review of the Bankruptcy records shows that the Debtor Dusan Pittner filed the underlying Bankruptcy on or about July 8, 2021 as a Voluntary Chapter 11 Petition. On or about July 26, 2022, the Petition was converted by Order of the Court to a Chapter 7. The Dukes were not named as creditors in the original Petition or any subsequent filing. The Debtor received an Order of discharge on or about November 4, 2022.

During the pendency of the Bankruptcy, the Court Ordered that the Trustee sell real property owned by the Debtor located in Florida. It appears that the proceeds from the sale were

then used to pay all of the unsecured creditors and make payments on secured debts to get them back in good standing. Moreover, it appears that the Trustee continues to hold the remaining proceeds until the Bankruptcy is formally closed.

The case has remained open following the Debtor's discharge seemingly due to a dispute over a certain creditor and whether the debt was valid or would be disallowed. On or about October 17, 2025, the disputed debt was disallowed. Consequently, the only remaining item appears to be the Trustee's final accounting and seeking approval to release the balance of the funds to Debtor. The final accounting was recently submitted, established that the Debtor is owed substantial funds.

## BACKGROUND SURROUNDING THE DUKES DEBT

As noted, the Dukes were never noted as a creditor in the original Petition or at any other time during the pendency of the case. The Dukes are post-petition creditors as the Judgment in their favor did not enter until October 20, 2025. However, because this Bankruptcy remains open and the debt was incurred, in part, during the time period that preceded the Bankruptcy filing, the Dukes are seeking to enforce their rights in this proceeding.

The Dukes were long-term tenants of the Debtor. They entered into an initial lease agreement with Debtor on or about August 13, 2013 for the real property located at 119 Randall Street, Easton, MA (hereinafter the "Property"). The tenancy commenced on September 1, 2013 and had a monthly rent of $2,800.00 per month. At the execution of the lease, the Tenants paid first and last month's rent and a security deposit of $2,800.00 each. The security deposit was not put in a separate interest-bearing account and the Tenants never received credit for any interest during the duration of their residency. The Dukes remained in possession of the Property until they vacated at the end of March 2022.

Following the Dukes vacating the Property, the Debtor, through his attorney at the time Donald Kupperstein (hereinafter "Attorney Kupperstein"), sent numerous demand letters alleging that the Dukes owed Debtor past due rent and alleged damages to the Property. The Dukes disputed they owed any rent or that they caused any damages to the Property. Given that Debtor was seeking funds of nearly $25,000.00, the Dukes retained counsel to represent their interests. Following review of the case by counsel, it became apparent that the Dukes had significant counterclaims relating to the illegal charging of utilities by Debtor, security deposit violations, among other claims. Looking to avoid protracted litigation, the Dukes, through counsel, informed Debtor's counsel that they would waive those claims if the Debtor agreed not to file any claim against them for the alleged damages he was seeking. However, it was noted that counterclaims would be filed if Debtor chose to litigate his claims. At no time was it disclosed that Debtor was in a Bankruptcy, and it is unclear whether it remained active during that time period.

Debtor filed suit in the Taunton District Court on December 20, 2022, which was a short time following the Debtor receiving his discharge. The Dukes filed their counterclaims and removed the case to Housing Court of Massachusetts shortly thereafter. The case progressed through various stages of litigation – discovery, dispositive motions, and ultimately trial. The case was scheduled for trial on January 28, 2025 and commenced on that date. Debtor was represented by Attorney Kupperstein during all of these time periods.

The Dukes' counterclaims focused on two main areas – the illegal charging of utilities and failure of the Debtor to maintain proper accounts for last month's rent, security deposit, and other requirements a Landlord must meet relating to those payments. Under Massachusetts law, a landlord cannot charge tenants for utilities unless (1) they have the exclusive occupancy of the

entire building or (2) there are separate meters for the space that they occupy. There are other requirements a Landlord must meet in order to charge utilities – though the specifics regarding the Dukes' claims are not substantially relevant to the issues in the Bankruptcy. In any event, the Dukes did not have occupancy of the entire home. As noted directly in the lease, the Landlord maintained exclusive use of the basement, which included an apartment. It was undisputed that the Property was "single-metered." Despite the single metering, the Debtor illegally charged the Tenants for all utilities including electric, heating oil, water, and septic clean out/pumping. Under the initial term of the lease, the Dukes were responsible for 50% of the utilities. Debtor would simply bill the Tenants, without providing verification, for their percentage interest. Beginning with the lease executed that was set to commence on September 1, 2014, the Tenants began paying 2/3 of the utility bills. They paid 2/3 of the utilities until they vacated at the end of March 2022.

During the trial, Debtor pursued his causes of action seeking recovery for what it alleged were missing rent payments, missed utility payments, and alleged damage to the Property caused by the Tenants during their tenancy. During the trial, Debtor committed blatant fraud against the Court by submitting fraudulent invoices relating to the "damages" that the Dukes caused. The invoices were created by Debtor and used a Limited Liability Company that was owned and operated by him to try and prove that there were damages. The true egregiousness of Debtor's fraud was exposed during cross-examination and introduction of the Dukes' exhibits into the record. The records of the utility companies proved that not only was the Debtor illegally charging the Dukes for utilities, but that he was falsely identifying the amounts owed. Debtor would bill the Dukes for what he claimed were 2/3 of the utilities. In reality, Debtor was often

times charging the Dukes 200% or more of the total utility bill and simply pocketing the amounts paid by the Dukes.

Seemingly acknowledging defeat, Debtor and Attorney Kupperstein pleaded with the Court to continue the remainder of the trial so that a possible resolution could be reached. The Court acknowledged this would be a smart decision of the Debtor and continued the trial until February 18, 2025. On or about February 14, 2025, Attorney Kupperstein communicated to the Dukes' attorney that he was retiring from the practice of law and would not attend the second day of trial. Debtor also failed to attend the second day of the trial. The Court proceeded with the second day of the trial and took the matter under advisement.

In or around May 2025, after the trial but before the Judgment entered, Debtor retained other counsel and sought to receive a new trial. It was around this time period where Debtor disclosed a pending Bankruptcy in an effort to avoid Judgment entering. This was the first time a Bankruptcy had been disclosed to the Dukes. The Judge fully reviewed the Bankruptcy prior to continuing forward with her decision and noted that it was appropriate to enter Judgment. After further time being under advisement, Judgment entered on October 20, 2025 for $227,105.05 which continued to accrue interest to this date at 12% per annum. Debtor did not appeal the decision.

Following entry of Judgment the Dukes planned to try and recover on the Judgment by seeking a sale of real property owned by Debtor for investment purposes. Before doing that, counsel for the Dukes spoke with the Trustee to ensure that the real property in question was not part of the Bankruptcy and that the Dukes were ok to proceed. Following this conversation, the Dukes awaited to see if there was a resolution in the Bankruptcy Court prior to proceeding with any further collection activity. Moreover, upon further research into the Bankruptcy, it appears

that the Trustee is holding funds that are sufficient to pay the Dukes' debt in full. An accounting indicating the Trustee continues to hold funds for the Debtor was filed on July 8, 2026. As such, the Dukes seek to be added as creditors to the proceeding so that their debt can be paid by the Trustee and/or so that they can seek relief from any stay that remains in place and continue any and all collection actions necessary to have the Judgment paid.

### REQUESTED RELIEF

The Dukes seek an expedited determination as top their status as creditors, given that the final accounting has recently been filed. Upon the allowance of the account, the Debtor will be provided sufficient funds to pay the Dukes' claim in full. However, given the history of the Debtor, it is highly unlikely that this amount gets paid to the Dukes. Pursuant to Fed. R. Bankr. P. 2018, any interested person can seek to intervene generally into a specified matter. As creditors of the Debtor, the Dukes are interested parties. They also seek, at the very least, clarification as to their rights to collect on the existing Judgment given the Bankruptcy still being opened – albeit for a clearly limited purpose.

The Dukes should be added as a creditor given the actions of the Debtor and his failure to add them or ever seek to amend the Schedules to add them following the counterclaim being filed or the Judgment being entered. This would allow the Dukes to have their Judgment paid in full. At the very least, the Dukes would like clarity regarding their rights as creditors and any existing stay in place to assert a separate reach-and-apply action or other collection action that can assure payment of the outstanding Judgment.

**WHEREFORE**, the Kim Duke and David Duke hereby request that the Court enter an Order allowing them to intervene into this action; add them as creditors; direct the Trustee to

disburse the amount of their Judgment from the Debtor's funds; grant relief from any automatic stay in the bankruptcy proceeding of Dusan Pittner, and award any other relief the Court deems just and proper.

Respectfully Submitted,

David Duke, Kim Duke,

By their attorney,

Dated: July 9, 2026

/s/ Matthew A. Ezepek, Esq.
Matthew A. Ezepek, Esq.
BBO No. 694535
Brent Warren Law, LLC
130 Liberty St., Ste. 10
Brockton, MA 02301-7500
508-587-0533
matt@brentwarrenlaw.com

## CERTIFICATE OF SERVICE

I, Matthew A. Ezepek, Esq., state that on July 9, 2026, I electronically filed the foregoing Request with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. Service was made using said System for all participants.:

/s/ Matthew A. Ezepek, Esq.